IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE O'SULLIVAN, JANICE ROCHE, and NANCY LIPMAN, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 01 C 9856 |
| v. | ) ) ) | |
| The CITY OF CHICAGO, | ) ) | MAGISTRATE JUDGE LEVIN |
| Defendants. | ) ) | |

**NOTICE OF FILING**

TO: Kevin Lee
Carl Turpin
Greene and Letts
111 West Washington Street
Suite 1650
Chicago, Illinois 60602

PLEASE TAKE NOTICE that on this 30th day of April, 2004, I have filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Plaintiffs' Response to Defendant City of Chicago's Memorandum of Law in Support of Its Motion for Summary Judgment and Plaintiff's Rule 56.1(b)(3) State and Evidentiary Appendix.

DATED AT Chicago, Illinois on this 30th day of January, 2004.

Respectfully submitted,

*Elisabeth Shoenberger*
ELISABETH SHOENBERGER
Attorney for Plaintiffs

770 North Halsted Street,
Suite 205
Chicago, Illinois 60622
(312) 733-1601

*In the United States District Court*
*For the Northern District of Illinois*
*Eastern Division*

FILED
APR 3 0 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Diane O'Sullivan, Janice Roche and Nancy Lipman,<br><br>Plaintiffs,<br><br>– v –<br><br>City of Chicago<br><br>Defendant. | No.: 01 C 9856<br><br>Magistrate Judge Levin<br><br>Jury Trial Demanded |

DOCKETED
MAY 0 3 2004

RECEIVED
APR 3 0 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## Plaintiffs' Memorandum Opposing Summary Judgment

Plaintiffs Diane O'Sullivan, Janice Roche and Nancy Lipman oppose as follows defendant's Motion for Summary Judgment:

## Statement of Facts

### Plaintiffs' employment with defendant

This is a race-discrimination, racial-harassment, and retaliation case. [Defendant's Facts ¶ 27-30.] Plaintiffs Diane O'Sullivan, Nancy Lipman and Janice Roche each worked for the Defendant City of Chicago with the police department. [Defendant's Facts ¶ 13, 20.] From 1999 to early 2000 each was assigned to work at the 002 District. [Defendant's Facts ¶ 13, 20.] The commander of the 002 District is Marienne Perry. [Defendant's Facts ¶ 7.] Beginning in the summer of 2000 each plaintiff was subjected to discrimination at the 002 District. [Plaintiff's Additional Facts ¶ 1-65.]

Commander Perry began in 2000 to systematically place African American police officers in positions of authority wherever possible, even if it meant transferring Caucasian officers in

1



order to create the openings. [Plaintiff's Additional Facts ¶ 33-58.] In this manner Commander Perry placed Lieutenant Crump-Hale as Tactical Lieutenant and Michael Shields as C.A.P.S. Lieutenant. [Plaintiff's Additional Facts ¶ 46, 54-56.] These placements were for highly visible and thus desirable positions. [Plaintiff's Additional Facts ¶ 55.] Despite there being other officers with more experience, Lieutenants Crump-Hale and Shields were placed in the positions. [Plaintiff's Additional Facts ¶ 56.]

Commander Perry then directed her attention towards the Watch Commander positions and the Desk Sergeant positions. [Plaintiff's Additional Facts ¶ 33-53, 57-58.] Commander Perry transferred Lieutenant Drozd (Caucasian), who was a Watch Commander, out of the District. [Plaintiff's Additional Facts ¶, 42-43, 50-51.] The result of this transfer was that it enabled her to place Michael Johnson (African American) as a Watch Commander. [Plaintiff's Additional Facts ¶ 51.] She also took Catherine McBride (Caucasian) off of Desk Sergeant and replaced her with Prentiss Jackson (African American). [Plaintiff's Additional Facts ¶ 39, 41, 49.]

When the Desk Sergeant assigned to Diane O'Sullivan as Watch Commander left in August 2000, O'Sullivan was informed by Commander Perry that Sergeant Roche would not be permitted to be the Desk Sergeant. [Plaintiff's Additional Facts ¶ 44, 52, 57.] Commander Perry then stated that she wanted Vernon Crawford (African American) to be the Desk Sergeant instead. [Plaintiff's Additional Facts ¶ 44, 52, 57.] Commander Perry then informed O'Sullivan that she needed to find a new district to work in, and while Lipman took over Watch Commander duties temporarily, the position was ultimately given to Richard Johnson (African American). [Plaintiff's Additional Facts ¶ 48.]

Allegations of discrimination by the plaintiffs, despite the statements to the contrary by the

defendant in the summary judgment brief, are not limited solely to the issue of the appointments of the Watch Commander and Desk Sergeant positions. [Plaintiff's Additional Facts ¶ 1-32, 59-105.] Underlying all the charges by the plaintiffs is the discriminatory and hostile environment against Caucasians created and perpetuated by Commander Perry and her front office staff. [Plaintiff's Additional Facts ¶ 1-32, 66-105.] These individuals set out and succeeded in making the plaintiffs feel unwanted and uncomfortable in 002 District. [Plaintiff's Additional Facts ¶ 1-32, 66-105.] Each of the plaintiffs testified during deposition that the treatment of them was markedly different by the front office and Commander Perry than the treatment of Lt. Crump-Hale (African American) and other African American officers. [Plaintiff's Additional Facts ¶ 17-21.] Commander Perry's own report in response to the CR she filed with respect to the allegations of discrimination bears this out. [Plaintiff's Additional Facts ¶ 5-16.] Throughout the report, she consistently denigrated the plaintiffs, arguing that the plaintiffs were racist and that as such their allegations against her should be discounted. [Plaintiff's Additional Facts ¶ 5-9, 11-12, 15.] The report, however, clearly portrays the divisive environment created by Commander Perry and the front office. [Plaintiff's Additional Facts ¶ 5-6, 9, 11, 15, 17.]

    In her report, Commander Perry stated that black supervisors did not often have the same kinds of conflicts as the plaintiffs had. [Plaintiff's Additional Facts ¶ 8.] Further, she alleged that the plaintiffs did not have the ability to speak to people of color in a non-condescending manner. [Plaintiff's Additional Facts ¶ 8.] She stated that Cain and others had demonstrated their insensitivity to the local community, as displayed by the personnel in question cutting their hair to look like skinheads and wearing their pants tucked into their boots like stormtroopers. [Plaintiff's Additional Facts ¶ 9.] Further, the Commander alleged that some members of the district believed

3

they had been inequitably scrutinized by the plaintiffs. [Plaintiff's Additional Facts ¶ 10.] These persons included Sgt. Tony Brown, Officers Gail Martin, Gregory Gilmer, Renee Sanders, and Etienne Davis, all of whom are African Americans. [Plaintiff's Additional Facts ¶ 10.] She stated that the plaintiffs were perceived as being people who had no respect for African Americans and who treated most African American people including the Commander with disdain and condescension. [Plaintiff's Additional Facts ¶ 11.] She believed that the plaintiffs did not seem capable of speaking to African American people in a manner that afforded them the dignity that was due them as human beings. [Plaintiff's Additional Facts ¶ 11.]

In her report, Commander Perry also makes it clear that she had deliberately isolated herself from O'Sullivan and Roche and had informed the front desk that she was not to be alone with them and that she only wanted to deal with them in writing. [Plaintiff's Additional Facts ¶ 30.] She states that the plaintiffs were holding extended closed-door meetings in the watch commander's office on an almost nightly basis and that African American personnel had begun to refer to these as "Klan Meetings." [Plaintiff's Additional Facts ¶ 6.] These statements clearly indicate that she treated the plaintiffs and other white officers in a different manner solely because of their race. [Defendant's Documents #C009102-C009129.] By utilizing such words as "Klan Meetings" and "skinheads," she deliberately discriminated against the plaintiffs. [Defendant's Documents #C009102-C009129.] The result of this discrimination was that the plaintiffs were not given equal treatment with African American officers. [See Plaintiff's Additional Facts.] This includes, but is not limited to, denial of equal opportunities to be appointed to the positions of watch commander and desk sergeant, heightened scrutiny and write-ups by Commander Perry, encouraging deliberate insubordination by subordinates such as Gregory Gilmer, and a deliberate

4

isolation of Janice Roche after the filing of the EEOC complaint in 2001. [Plaintiff's Additional Facts ¶ 33-58, 66-77, 78-93.] This isolation of Janice Roche endangered Janice Roche's life when on April 13, 2001, while at a crime scene with a brawl breaking out, she requested backup and no one from 002 District appeared. [Plaintiff's Additional Facts ¶ 66-67.]

After the EEOC issued the plaintiffs notice of right to sue, this lawsuit followed. [Defendant's Facts ¶ 8-10.] Defendant has now moved for summary judgment. [Defendant's Motion for Summary Judgment.]

## Argument

I. **In this case, under any legal theory, a reasonable jury could infer discrimination, harassment, and retaliation from defendant's racially motivated assignments, racially motivated charges, and harassment.**

On this Motion for Summary Judgment, it is black-letter law that the plaintiffs are entitled to the benefit of all contested facts and all reasonable inferences from the contested and uncontested facts. See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 150-51 (2000).

Giving the plaintiffs the benefit of the contested facts and of the reasonable inferences, the plaintiffs have provided, under any legal theory, evidence of discrimination, harassment, and retaliation. A reasonable jury could find that the transfers and appointments with respect to Watch Commanders and Desk Sergeants were done on the basis of race; such a jury could also find that there was a pervasive anti-Caucasian bias at the 002 District which created a hostile environment for the plaintiffs. That same reasonable jury could further find that plaintiffs protested this racial discrimination to the department and to the EEOC. A reasonable jury could

5

also find that instead of attempting to address the discrimination, the police department sought to punish the plaintiffs by permitting Commander Perry to retaliate against the plaintiffs for filing an internal grievance procedure and later an EEOC procedure. This retaliation included permitting a petition to be circulated at the district which resulted in Sergeant Roche being stranded at a crime scene and CRs being filed against each of the plaintiffs.

Despite defendant's assurance to the court that this case has to be determined using the McDonnell-Douglas burden-shifting analysis, plaintiffs argue that the report filed by Commander Perry provides direct evidence showing racial animus towards the plaintiffs. The report clearly shows that Commander Perry made determinations with respect to the plaintiffs as a result of their race. She deliberately informed her front office staff to keep the plaintiffs separate from her. She deliberately chose African American police officers instead of white officers for positions because she felt that they dealt with her, her front office staff, and the public in better ways. She deliberately singled out the plaintiffs and other white officers for investigations on the basis of their race.

This inference of discrimination, harassment, and retaliation is further strengthened by the pretextual nature of the reasons given by Commander Perry for her actions. Giving the plaintiffs the benefit of the contested facts and inferences, as must be done on this Motion for Summary Judgment, a reasonable jury could find that O'Sullivan and Lipman were removed from 002 District and from the Watch Commander positions for refusing to remain silent regarding the treatment of Caucasian officers by Commander Perry and the front office staff at the 002 District. That reasonable jury could further find that despite Commander's Perry's statements that individuals had problems with O'Sullivan, Lipman, Roche, Drozd, McBride, and Cain, nothing

6

was written up against these individuals contemporaneously with the decision either not to permit them from being a Desk Sergeant or to remove them from being a Watch Commander, and such a reasonable jury could further find that each of these officers had more experience in the positions than their replacements. See, Dunn v. Nordstrom, Inc., 260 F.3d 778 at 786 (7th Cir. 2001). Because a reasonable jury could infer discrimination, harassment, retaliation, and pretext, defendant's Motion for Summary Judgment should be denied.

As to the legal theories which the plaintiffs could use, there is not only the McDonnell-Douglas method of proof discussed in Defendant's Memo, but also circumstantial evidence, such as evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected class, and bits and pieces from which an inference of discriminatory intent might be drawn". Troupe v. May Department Stores, 20 F.3d 734 at 736 (7th Cir. 1994) (emphasis added). This ability to prove a case by circumstantial evidence is nothing new; as the Supreme Court has recently unanimously reminded us, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence". Desert Palace, Inc. v. Costa, 539 U.S. 90 (#02-679 6/9/03) slip opinion at 9. Thus, circumstantial evidence is a valid method of proof in Title VII cases, just as it is in virtually all areas of the law, both civil and criminal. Id. slip opinion at 9 - 10.

In our case, the plaintiffs' proof fits both the circumstantial-evidence method of proof and the McDonnell-Douglas method of proof. As to the circumstantial-evidence method of proof, Defendant's harassment of the plaintiffs, its filing of CRs against the plaintiffs immediately upon discovering that they were documenting the harassment and discrimination, and the classic indicia of pretext present in our case combine to provide ample circumstantial evidence from which a

7

reasonable jury could infer discrimination.

As to the McDonnell-Douglas method of proof, that method of proof is intended to be a help for discrimination plaintiffs, not a straightjacket. Applying the proper, and flexible, McDonnell-Douglas test, rather than defendant's straightjacket, it is clear that the plaintiffs are entitled to go the jury. Defendant's summary judgment motion provides substantial coverage of the law in this area, but glosses over all the facts presented through discovery. Plaintiffs have provided sufficient facts to show that they meet all the requirements of the prima facie case. Each of the plaintiffs were either removed from the position of Watch Commander or denied the opportunity to be a Desk Sergeant. In each case, the individual had more experience in the role than the replacement. In each case, the replacement or the individual assigned in lieu of them was African American. As such, the prima facie case has been made with respect to this issue. Finally, as to pretext, genuine issues of material fact and classic indicia of pretext abound in our case, as is shown above. Commander Perry repeatedly stated that white officers under her command lacked "people skills," but this sweeping generalization is merely a pretext for the racially-motivated decisions made in regard to those officers. This inference of pretext is strengthened by the fact that Commander Perry rarely, if ever, described African American officers as lacking in "people skills." Further, in addition to those classic indicia, pretext, as the Supreme Court has stated, can also be shown by "the plaintiff's initial evidence, combined with effective cross-examination of the defendant" [Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 at 255 n.10 (1981)], and the facts of our case provide plenty of cross-examination fodder for the plaintiffs. One such example is that despite the defendant's claim that it is a commander's prerogative to choose the desk sergeant, both the plaintiffs and Commander Perry

8

could not provide one other incident where a commander had made the decision of who was to be a desk sergeant. Commanders always leave that decision to the discretion of their watch commanders.

Further, the plaintiffs strongly object to the characterization of this case by the defendant. This case is not just about what positions they held or what shifts they worked, as suggested by the defendant. This case addresses the pervasive discrimination which occurred in the 002 District. It is true that one aspect of that discrimination was the issue of appointments to Watch Commander and Desk Sergeant, but the issues are far more varied than that. The discrimination also involves the hostile environment engendered by Commander Perry and her front office staff. This hostile environment included open hostility against the plaintiffs, denial of access to Commander Perry, CRs being initiated against the plaintiffs, removal or undermining of their authority with respect to their subordinates, and finally intimidation of supporters of the plaintiffs to such an extent that Sergeant Roche was stranded at a crime scene, calling for backup without any officers responding from her district.

The defendant in the summary judgment motion either glosses over or ignores most of these points and as such even if the court were to find that the plaintiffs had not provided sufficient evidence to survive summary judgment on the issue of the appointment of Watch Commander or Desk Sergeant, the court does not have the remaining issues properly before it to throw out the remainder of the case.

Therefore, because a reasonable jury could infer discrimination, harassment, and retaliation, the plaintiffs have met both the circumstantial-evidence and the McDonnell-Douglas tests, and summary judgment should be denied.

9

**II.    Summary judgment should be denied because the record abounds with material, contested facts, with reasonable inferences that the plaintiffs are entitled to the benefit of, with credibility issues, and because defendant "improves" the facts.**

In our case, there are clear issues of material fact, inferences, and credibility that prevent the entry of summary judgment. See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 150-51 (2000). Indeed, to bring a Motion for Summary Judgment knowing that there are genuine issues of fact and of credibility is simply improper. See, Goka v. Bobbitt, 862 F.2d 646 at 650 (7th Cir. 1988)(rehearing denied)(when a party has obtained knowledge through the course of discovery, or otherwise, that a material factual dispute exists and yet proceeds to file a summary judgment motion, that party defeats the purpose of summary judgment motions and violates Rule 11).

So as not to simply reproduce plaintiffs' Response to Defendant's Statement of Facts, this Argument will concentrate on only a few examples of the genuine issues of fact, inference, and credibility that abound in this case. Simply reading defendant's facts, however, will show that there are many other examples, too, none of which the plaintiffs waive. These include but are not limited to the issue of whether or not Garcia required O'Sullivan and Lipman to provide a report within seven days (proposed facts 58-60), whether or not Perry or the front office encouraged CRs to be initiated against the plaintiffs (proposed fact 67), and the proffered reason for Lieutenant Drozd's removal from Watch Commander and transfer from 002 District (proposed fact 74). In each case, the evidence of both sides demonstrates that these proposed facts in reality involve genuine questions of material fact.

Defendant's reliance on the statements of Commander Perry and Police Agent Garcia also

shows that its Motion for Summary Judgment relies on an invalid credibility determination and, therefore, the motion is not well taken. A summary-judgment motion cannot rely on the testimony of an interested witness, because the jury could disregard the testimony of such a witness. See, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 151 (2000). See also, Salitros v. Chrysler Corp., 306 F.3d 562 (8th Cir. 2002), Russell v. McKinney Hospital Venture, 235 F.3d 219 (5th Cir. 2000). In our case, Commander Perry, the individual in charge of the 002 District and one of the persons accused of discrimination, racial harassment, and retaliation, is clearly an interested witness and, thus, her self-interested statements are not a proper basis for summary judgment. This same analysis applies with equal force to the testimony by Agent Garcia. The issue of motivation on the part of Agent Garcia and Commander Perry in and of itself creates a question of fact. As such, this question is an ultimate factual question of whether or not a jury would infer discrimination, harassment, and retaliation from all the facts. As the Supreme Court stated in Hunt v. Cromartie, 526 U.S. 541 at 549 (1999), "motivation is itself a factual question".

Therefore, because defendant's motion relies on contested issues of fact, inference, and credibility, the Motion for Summary Judgment should be denied.

### III. Summary judgment should also be denied because, under the Civil Rights Act of 1991, race need only be one motivating factor, even though other factors also motivated the defendant.

In our case, a reasonable jury could infer that race was one factor that motivated defendant's treatment of the plaintiffs, even if defendant was also motivated by other factors. If the jury does infer that, then, under § 107 of the Civil Rights Act of 1991 [42 U.S.C. §§ 2000e-2(g), (m)(B)], defendant is still liable to the plaintiffs. See also, Desert Palace, Inc. v. Costa, 539

11

U.S. 90 (#02-679 6/9/03).

If a reasonable jury does infer race was one factor that motivated defendant, even if there were other factors, then <u>defendant</u> will have a burden of proof – not merely of production – to show that it would have taken the same action in the absence of the racial consideration. <u>See</u>, § 107 of the Civil Rights Act of 1991 [42 U.S.C. §2000e-2(m)(B)]. <u>See also</u>, <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (#02-679 6/9/03). In that case, summary judgment would be totally inappropriate, both because defendant has done nothing to meet its burden of proof and because "[s]ummary judgment in favor of the party with the burden of persuasion...is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact". <u>Hunt v. Cromartie</u>, 526 U.S. 541 at 553 (1999).

Therefore, under § 107 of the Civil Rights Act of 1991, summary judgment should be denied.

### IV. Summary judgment should also be denied with respect to plaintiffs' claim under Section 1983

Plaintiffs do allege a violation of § 1983 based upon the equal protection clause, despite the position of the defendant. Plaintiffs disagree with respect to the statement provided in defendant's brief that the plaintiffs have failed to provide evidence of a policy that when enforced causes a constitutional deprivation. As the defendants showed in their 46th proposed fact:

> Any member of the Department who feels that he has been the subject of a false accusation or a contrived situation may request an investigation by the Internal Affairs Division by submitting a written report of his situation directly to the Superintendent of Police or the Assistant Deputy Superintendent, Internal Affairs Division. The member may submit this request without prior report to his superiors. (Ex. I, Specific Responsibilities, D. Internal Affairs Division, paragraph 3).

The result of this policy is the creation of an environment which discourages individuals from

12

complaining about harassment and discrimination for fear that they, rather than the alleged harasser or individual who discriminates, will be the subject of an investigation.

As this case bears out, such a result does occur because of this policy. When Commander Perry learned that she was going to be accused of discrimination, she filed a CR seeking an investigation into the plaintiffs. As she hoped, the result of this action was to turn the table on the victims of discrimination such that they became the accused rather than the accuser. Therefore this policy should be held to be a direct violation of the plaintiffs' rights under the equal protection clause and this element of their complaint should not be dismissed under summary judgment.

## Conclusion

For these reasons, defendant's Motion for Summary Judgment should be denied.

Diane O'Sullivan, Nancy Lipman and Janice Roche,
Plaintiffs,

By: *Elizabeth Shoenberger*
Their attorney

**Proof of service**: I, Elisabeth Shoenberger, an attorney, certify that I served this Response on defendant by mailing a copy of the same to its attorney:

>Kevin T. Lee
>Carl Turpin
>Greene and Letts
>Attorneys for Defendant
>111 West Washington Street
>Suite 1650
>Chicago, IL 60602

from the U.S. Post Office, Loop Station, Chicago, Illinois, with proper 1st-class postage affixed, on April 30, 2004.

*Elisabeth Shoenberger*
Elisabeth E. Shoenberger

Law Offices of Elisabeth Shoenberger
770 N. Halsted Street, Suite 205
Chicago, Illinois 60622
312-733-1601

14