# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9856 | **DATE** | 7/29/2004 |
| **CASE TITLE** | O'Sullivan vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order on defendant's motion for summary judgment as to plaintiff's section 1981 and 1983 claims. Defendant City of Chicago's motion for summary judgment as to plaintiffs' 1981 and 1983 claims (First and Second claims of relief) is granted and those claims are dismissed with prejudice.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 2 2004 date docketed | |
| | Notified counsel by telephone. | | | 45 |
| | Docketing to mail notices. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 JUL 30 PM 5:13 | 7/30/2004 date mailed notice | |
| SM | courtroom deputy's initials | Date/time received in central Clerk's Office | SM mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DIANE O'SULLIVAN, JANICE ROCHE, )
and NANCY LIPMAN, )
)
Plaintiffs, )
) Case No. 01 C 9856
v. )
) Magistrate Judge Ian H. Levin
CITY OF CHICAGO )
)
Defendant. )
)

**DOCKETED**

**AUG 0 2 2004**

## MEMORANDUM OPINION AND ORDER

Before the Court, presently, is Defendant's motion for summary judgment as to Plaintiff's Section 1981 and 1983 claims.[1] For the reasons hereinafter set forth, the Court grants Defendant's motion as these claims.

## BACKGROUND FACTS

Plaintiffs Diane O'Sullivan, Janice Roche and Nancy Lipman (hereinafter "Plaintiffs") initiated this reverse race discrimination action against Defendant City of Chicago (hereinafter "Defendant") asserting various race discrimination claims. (Complt. ¶¶ 25-29.) Plaintiffs, who are Caucasian, work for the City of Chicago Police Department in the capacity of police officers and hold the career service rank of police lieutenants. (Def.'s LR56.1(a)(3) St. ¶¶ 3-5, 11-14, 16-19, 24-26; Complt. ¶ 7.) From approximately 1999 to 2001, Plaintiffs were assigned to the Second District stationhouse of the Chicago Police Department. (*Id.* at ¶¶ 14, 20, 26.) Commander Marienne Perry, who is African-American, held the position of District Commander of the Second District

---

[1]Defendant has also filed for summary judgment as to Plaintiffs' Title VII claims in this cause. A decision as to these claims will be rendered by the Court at a later time.

stationhouse of the Chicago Police Department during the relevant time period.[2] (*Id.* at ¶ 7.)

Plaintiffs, essentially, aver *inter alia* that, beginning in the summer of 2000, Commander Perry systematically placed African-American police officers in positions of authority and transferred more experienced Caucasian police officers to other positions in order to create openings for African-American police officers. (Pl.'s Mem. at 1-2.) Plaintiffs further contend that Commander Perry transferred Caucasian police officers who served in Watch Commander and Desk Sergeant positions out of the Second District stationhouse so that she could replace them with African-American police officers. (*Id.* at 2.) Plaintiffs also assert that, in addition to the discriminatory appointment of African-American police officers to positions of authority, Commander Perry and her office staff, created and perpetuated a hostile work environment towards the Caucasian police officers. (*Id.* at 2-3.) Accordingly, Plaintiffs allege that the result of this discriminatory treatment was that they were not afforded equal treatment as that of the African-American police officers. (*Id.* at 4.)

## **LEGAL STANDARDS**

### I.     **SECTION 1983**

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . 42 U.S.C. § 1983.

---

[2]Plaintiffs, however, state that Commander Perry is no longer the District Commander of the Second District stationhouse and allege that aspects of their complaint address the continuing damage to their reputations. (Pls.' Resp. to Def.'s LR56.1(a)(3) St. ¶ 7.)

2

In order to prevail on a Section 1983 claim against the Defendant City here, a plaintiff must meet the standards for municipal liability established by the Supreme Court in *Monell v. Dep't Social Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally, a municipality cannot be held liable for a Section 1983 claim based on a theory of *respondeat superior.* *McGreal v. Ostrov,* 368 F.3d 657, 684 (7th Cir. 2004); *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir. 2002). Rather, "it is when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018, 56 L.Ed.2d 611; *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734 (7th Cir. 1994)(superceded by statute on unrelated point). Thus, in order for a plaintiff to maintain a Section 1983 claim against a municipality, "one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable,* 296 F.3d at 537 (*citing Monell,* 436 U.S. at 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611). *See also Kujawski v. Bd. of Commissioners of Bartholomew County, Indiana,* 183 F.3d 734, 737 (7th Cir. 1999)(A municipality cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom.")

The case law has established three circumstances in which a municipality can be said to have violated an individual's civil rights because of its policy:

> (1) an express policy, that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

3

*McGreal*, 368 F.3d at 684; *Baxter*, 26 F.3d at 734-35; *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Moreover, it is important to point out that "[i]t is true that a single act or decision of a final policymaker can establish municipal policy." *Baxter*, 26 F.3d at 735; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

## II. SECTION 1981

Section 1981 bars all racial discrimination with regard to making and enforcing contracts. 42 U.S.C. § 1981(a). Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. 42 U.S.C. § 1981(a).

Thus, similar to a Section 1983 claim, a plaintiff is required to "show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Looper Maintenance Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999)(*quoting Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

## III. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary

4

judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Linc*, 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, 91 L.Ed.2d 202, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505, 91 L.Ed.2d 202. Therefore, if the court concludes that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and summary judgment must be granted. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348, 89 L.Ed.2d 569 (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## DISCUSSION

### I. SECTION 1983 CLAIM

The Defendant City avers that Plaintiffs cannot prevail under Section 1983 because they have

failed to establish a constitutional deprivation based on municipal liability. (Def.'s Mem. at 15-16.) Specifically, Defendant contends that Plaintiffs have failed to demonstrate that the actions of the station house Commander Perry and Police Agent Gerardo Garcia[3] constitute those actions of a final policymaker.[4] (*Id.* at 16.) Rather, Defendant asserts that Plaintiffs' evidence, at most, establishes that Commander Perry and Police Agent Garcia acted contrary to the City of Chicago's policy prohibiting racial discrimination.[5] (*Id.*) Therefore, according to Defendant, Plaintiffs have failed to establish the existence of a municipal policy or practice sufficient to establish municipal liability. (*Id.*)

Plaintiffs, on the other hand, assert that they have produced evidence of a policy that, when enforced, causes a constitutional deprivation. (Pl.'s Mem. at 12.) The subject policy states:

> Members of the [Chicago Police] Department who feel that they have been the subject of a false accusation or a contrived situation may request an investigation by the Internal Affairs Division by submitting a written report of the situation directly to the Superintendent of Police or the Assistant Deputy Superintendent, Internal Affairs Division. Members may submit this request without prior report to their superiors. (Chicago Police Department, Specific Responsibilities, General Order 93-03-02B, May 23, 2001 (issue date), Section D, Par. 3.)

---

[3]Police Agent Garcia was assigned to handle the investigation of Complaint Register No. 265581. (Def.'s LR56.1(a)(3) St. ¶ 53.) A "Complaint Register" is a term used to denote an internal investigation regarding police officer misconduct. (*Id.* at ¶ 31.) Complaint Register No. 265581 essentially entailed an investigation of Commander Perry which she allegedly initiated to investigate Plaintiffs Sullivan and Lipman accusations that she was discriminating against them and because she believed she was being accused of being a racist. (*Id.* at ¶¶ 52, 54.)

[4]*See Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992)(Even Chicago's Police Chief is not a final policymaker). The authority to determine City employment policies is vested only in the City Council and its Commissioner of Personnel. *See e.g.,* Municipal Code of Chicago § 2-74-050; *Limes-Miller v. City of Chicago*, 773 F.Supp. 1130, 1136 (N.D. Ill. 1991).

[5]Ordinances applicable to the Chicago Police Department unequivocally ban racial discrimination. Municipal Code of Chicago § 2-160-030.

6

Accordingly, Plaintiffs assert that the subject policy is a direct violation of their rights under the Equal Protection Clause. (*Id.*)

Upon review, the Court, respectfully, finds the Plaintiffs' assertion that the recited General Order, when enforced, causes a constitutional deprivation to be conclusory and speculative. As a matter of law, this conclusory assertion fails to establish the "requisite causation" for a *Monell* municipal policy claim (the policy was the "moving force" behind a constitutional deprivation). *Gable,* 296 F.3d at 537 (*citing Monell,* 436 U.S. at 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611).

## II. SECTION 1981 CLAIM

Defendant argues herein, as it did with respect to Plaintiffs' Section 1983 claim, that Plaintiffs *inter alia* have failed to establish municipal liability as required by Section 1981. (*Id.* at 15-16.)

Plaintiffs, on the other hand, do not respond to Defendant's argument with regard to Plaintiffs' Section 1981 claim.[6] (Pl.'s Mem. at 11-12.)

As discussed *supra* in regard to Plaintiffs' Section 1983 claim, the Court finds that Plaintiffs have failed to produce any facts alleging misconduct on the part of Defendant indicating that the alleged constitutional deprivation was based on a municipal policy, custom or caused by an individual with final policymaking authority. *See e.g., Looper Maintenance Serv. Inc.,* 197 F.3d at 913 (*quoting Jett,* 491 U.S. at 735-36, 109 S.Ct. 2702, 105 L.Ed.2d 598)(a plaintiff is required to "show that the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.")

---

[6]Plaintiffs only assert a contention based on Section 107 of the Civil Rights Act of 1991. However, Plaintiffs' complaint contains no claim of relief based on this statutory provision. (*See* Complt.)

7

Therefore, the Court finds that there are no genuine issues of material fact with respect to Plaintiff's Section 1981 claim. Accordingly, Defendant's motion for summary judgment as to this issue is granted.

## CONCLUSION[7]

In view of the foregoing, Defendant's motion for summary judgment is granted as to Plaintiffs' Section 1981 and 1983 claims. Accordingly, these claims are dismissed with prejudice.

ENTER:

*[signature]*

IAN H. LEVIN
**United States Magistrate Judge**

Dated: July 29, 2004

---

[7]In view of the Court's ruling herein, it is deemed unnecessary to consider Plaintiff's and Defendant's other arguments raised herein.