

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIANE O'SULLIVAN, JANICE ROCHE, and NANCY LIPMAN, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | No. 01 C 9856 <br><br> Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER RE: DIANE O'SULLIVAN'S MOTION FOR AN ORDER SETTING LOST PAY

### I.
### INTRODUCTION

Jury selection began on April 10, 2006, and the case ended on April 21, 2006. On April 24, 2006, the jury returned a verdict in favor of the defendant on the plaintiffs' discrimination claims and verdicts in favor of the plaintiffs on their retaliation claims, which were based on Commander Marienne Perry's retaliation for their filing of a grievance with the Chicago Police Department charging race discrimination and/or charges they made with the Equal Employment Opportunity Commission. (*See* Jury Instruction 18). On Officer O'Sullivan's retaliation claim, the jury awarded $50,000.00. She now seeks an award of the pay she contends she lost by being removed from First Watch Commander to Third Watch Commander, which she contends was in retaliation for her having filed grievances against Commander Perry.

## II.
## THE EFFECT OF THE JURY'S VERDICT ON THE BACK PAY QUESTION

Congress characterized backpay under Title VII as a form of "equitable relief." 42 U.S.C. § 2000e-5(g) (1982 ed.): "[T]he court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate." *See Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572 (1990). It is settled practice that "[w]here both legal and equitable relief are sought by a plaintiff, the Seventh Amendment right to a jury trial requires that the legal claims be tried first, to a jury." *Miles v. Indiana*, 387 F.3d 591, 599 (7th Cir. 2004)(*citing Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir.1978)). In *Miles*, the Seventh Circuit explained that:

> [a]fter a trial on the legal issues, any issues *necessarily and actually decided* by the jury are foreclosed under settled principles of collateral estoppel from subsequent reconsideration by the district court. The court may not make findings "contrary to or inconsistent with the jury's resolution … of that same issue as *implicitly* reflected in its general verdict … on the damages claim." The judge is bound by the issues *necessarily decided* by the jury, and, therefore, the jury's determination often affects the judge's disposition of the accompanying equitable claim. *However, when the basis of the jury's verdict is unclear, each of the potential theories supporting the verdict is open to contention* "unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined." Therefore, when several issues have been litigated, and the jury may have supported its verdict by finding in the plaintiff's favor on any one of the issues but which one is *not clear*, the court is free to determine the basis of the jury's verdict unless extrinsic evidence *clearly* resolves the issue.

387 F.3d at 599-600 (citations omitted)(emphasis supplied).

Here, the jury found that the defendant retaliated against O'Sullivan for taking part in the filing of the grievance against Commander Perry. However, the jury's verdict did not rest "necessarily" on the removal of O'Sullivan as Watch Commander. There were other actions taken

against O'Sullivan that arguably could have been the basis of the jury's verdict, including the treatment of O'Sullivan's grievance, and the filing of two formal complaints (called complaint registers) against O'Sullivan. The evidence is discussed at length in the Memorandum Opinion and Order on the Defendant's Motion for Judgment as a Matter of Law. Consequently, it cannot be said that it is "clear" that the jury, either explicitly or implicitly, decided that the removal of Officer O'Sullivan as Watch Commander was in retaliation for her participation in the grievances against Commander Perry. Indeed, the timing of that removal is a persuasive datum that the jury did not rely on it in finding that Commander Perry retaliated against Officer O'Sullivan.

## A.
## The Timing Of Officer O'Sullivan's Removal As First Watch Commander

During the period January through September 13, 2000, O'Sullivan worked as First Watch Commander on 141 days, or between 16 and 17 days per month, receiving additional pay because the position ought to have been filled by a captain. (4/11/2006–1 p.m. Tr. 122). According to the motion, after Officer O'Sullivan joined in the racial discrimination grievance against Commander Perry, she was removed as First Watch Commander and suffered a decrease in the days per month she was assigned to that position with a consequent loss in pay of $2,406.31.

O'Sullivan and six other white police officers filed a union grievance against Commander Perry on September 27, 2000, charging her with racial discrimination. (4/11/2006–1 p.m. Tr. 117). This, according to the plaintiffs, was the *statutorily protected* activity that gave rise to the defendant's retaliation against them. (*Plaintiffs' Motion on Behalf of Diane O'Sullivan to Set Lost Pay*, ¶¶ 1-2 ("*Plaintiff's Brief*"); 4/12/2006– 9:30 a.m. Tr. 215); *see Lang v. Illinois Dept. of Children and Family Services*, 361 F.3d 416, 419 (7th Cir. 2004)(union grievance about racially discriminatory

3

practice qualified as protected activity under Title VII); *Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir.2001) ("statutorily protected" activity not limited to filing of EEOC charge). But O'Sullivan, while initially testifying that Commander Perry removed her as First Watch Commander after she filed the grievance, conceded that the removal actually occurred over a month *before* the grievance was filed:

> Q: Okay. After you filed the grievance, were you removed as watch commander?
>
> A: Yes.
>
> Q: By whom?
>
> A: By Commander Perry.
>
> Q: Did she ever give you an explanation?
>
> A: No. This was going back to the 16th of August, when she said she was going to assign me to the third watch. But that was it.[1]

(4/11/2006–1 p.m. Tr. 121-122).

Prior to August 16, 2000, as indicated in her instant motion, Officer O'Sullivan served frequently as First Watch Commander, assigned by Commander Perry, for a period of about seven months. (4/11/2006–1 p.m. Tr. 150-151). Once Commander Perry assigned her to the Third Watch, she was further down in priority, in terms of seniority, and had fewer opportunities to serve as Watch Commander. (4/11/2006–1 p.m. Tr. 151-152). The result was fewer shifts during which she earned

---

[1] The grievance was filed more than a month later on September 27th. Moreover, O'Sullivan's testimony as to whether she was provided an explanation for the reassignment was equivocal. Earlier in her testimony – and later, during cross examination – O'Sullivan testified that Commander Perry told her she was being transferred to the Third Watch because she had a bad attitude. (4/11/2006–1 p.m. Tr. 107-108, 153). The reassignment also coincided with an altercation O'Sullivan had with Lieutenant Crump-Hales, (4/11/2006–1 p.m. Tr. 103, 155-158), as the plaintiffs' reply brief concedes. (*Reply*, at 2-3).

4

captains' pay. According to O'Sullivan's testimony and her instant motion, her tenure on the Third Watch – and accompanying reduction in shifts as Watch Commander – began on September 15. (*Plaintiff's Motion to Set Lost Pay*, Ex. A, ¶¶ 3, 6). But, based on O'Sullivan's testimony and the evidence, even that was about two weeks before she filed the grievance against Commander Perry on September 27, 2000. (4/11/2006–1 p.m. Tr. 151-152).

In short, the evidence does not support the argument that jury's verdict necessarily and actually was based on Officer O'Sullivan's reassignment from the First to the Third Watch.

## B.
## The Nature Of The Conduct That Prompted Officer O'Sullivan's Transfer To The Third Watch

Title VII prohibits employers from punishing employees for complaining about discrimination or other practices that violate Title VII. 42 U.S.C. § 2000e-3(a). *Tomanovich v. City of Indianapolis*, 457 F.3d 656 (7th Cir. 2006); *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005). But the triggering event – the event giving rise to the purported retaliation – must be the complaint about discrimination. Since there obviously can be no claim of retaliation for a complaint of which the employer is unaware, *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000); *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003), the threshold question is whether the *defendant* was aware of O'Sullivan's complaint of discrimination at the time Perry decided to remove her as First Watch Commander. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004); *Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir.2000). "It is not sufficient that [the City] *could* or even *should* have known about [O'Sullivan's] complaints; [it] must have had actual knowledge of the complaints for [its] decisions to be retaliatory." *Luckie*, 389 F.3d at 715 (emphasis in original); *Hayes v. Potter*, 310 F.3d 979, 982-83 (7th Cir.2002).

5

Here, the evidence demonstrated that Commander Perry decided to remove Officer O'Sullivan as First Watch Commander long before she filed her grievance, and that she removed her as First Watch Commander two weeks before the grievance was filed. Consequently, Commander Perry's decision could not have been retaliatory, for "[i]t is axiomatic that a plaintiff engage in statutorily protected activity *before* an employer can retaliate against her for engaging in statutorily protected activity." *Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir.2003)(emphasis supplied). *See also Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004).

Commander Perry's testimony was that she did not learn of the grievance until mid to late October 2000. (4/11/2006-9:30 a.m. Tr. 10-11, 27). If this testimony were accepted, there would be absent the causal connection required by Title VII. A more recent characterization of the evidence has been advanced in Officer O'Sullivan's post-trial brief:

> Factually, Commander Perry transferred Diane O'Sullivan *two days* after she initiated the complaint register against herself on September 11, 2000. [2] As we know, Commander Perry was of the view at that time that Diane O'Sullivan was holding Klan meetings at the Second District. Can the Defendant really argue with a straight face that Commander Perry was not in a retaliatory mood long before September 27, 2000? Commander Perry had already been engaging in retaliation against Diane O'Sullivan by mid-August. When Diane and Lilli Crump-Hales got into the spat at the office, Perry issued CR numbers against both of them, then transferred Diane off of her watch and promptly recommended Crump-Hales to be a captain.

(*Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion on Behalf of Diane O'Sullivan*, at 2-3).

Commander Perry may well have been in a "retaliatory mood" when she decided to transfer Officer O'Sullivan to the Third Watch. But it does not follow that the transfer is retaliatory within

---

[2] But even this date is almost a month after O'Sullivan, herself, testified that Commander Perry had told her she was being moved to the Third Watch.

6

the meaning of Title VII. Was the decision to transfer in response to Perry's dislike of O'Sullivan, her apparent belief that O'Sullivan was herself something of a racist, that she was participating in what Perry conceived of as Klan-like meetings, that she had offended her good friend, Lt. Crump-Hales? Or was it in retaliation for information she had obtained from some informal source that O'Sullivan and her colleagues genuinely believed that Perry was a racist. The answer to that question simply cannot be ascertained from the jury's verdict since there were any number of incidents upon which the verdict could have been based.

Title VII does not prohibit "retaliation" in the workplace, simpliciter. It is only when a defendant has retaliated against a person for engaging in the statutorily protected activity of complaining to the employer about discrimination or other practices that the anti-retaliation prohibitions in Title VII come into play. *See Moser*, 406 F.3d at 903; *Firestine V. Parkview Health Systems, Inc.*, 388 F.3d 229, 234 (7th Cir. 2004); *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997).

The evidence was clear that at least by September 2000, Commander Perry had concluded that Officer O'Sullivan and others had "conspired to spread the word that certain personnel changes made to facilitate the smooth and efficient operation of the District have been made for racial reasons." (*Plaintiffs' Ex.* 10, at 1).[3] But that was weeks after O'Sullivan testified she was told of her transfer to the Second Watch. More importantly, the plaintiff's theory of the case as it went to

---

[3] On September 11, 2000, Commander Perry initiated a complaint (i.e., a CR) that was nominally against herself in which she made these allegations against O'Sullivan and the others. (4/11/2006–9:30 a.m. Tr. 11-12; Plaintiffs' Ex. 10). The jury certainly could have concluded that the initiation of the CR *against herself* was pretextual. False allegations of racism should have prompted Perry to have issued a CR against those making the calumnies – not against herself. After all, she was the innocent victim – according to her. Of course, it was for the jury to determine whether Commander Perry's CR against herself was legitimate or was a clever manipulation of police department procedures.

7

the jury was that the retaliation had to be for the filing of the grievance with the Chicago Police Department and/or the EEOC. (Jury Instruction 18). Thus, it cannot be said that the jury necessarily found that Officer O'Sullivan was transferred to the Third Watch in retaliation for her unofficial griping about Commander Perry's purported racism – gripes about which Perry learned from her "source[s]."

Moreover, "generalized complaints" of discrimination to coworkers – without more (and that is all the evidence showed prior to the actual filing of the grievances) – are not within the scope of the statutorily protected activity covered by Title VII. *See, e.g., Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997)(unless plaintiff made "feelings" that she was being discriminated against known "to her employer," (i.e., someone "in authority"), they are irrelevant).[4] Here, the only protected activity that the plaintiffs asked that the jury be instructed about was O'Sullivan's grievance on September 27, 2000. The removal of O'Sullivan as Watch Commander – the purported retaliation – preceded the statutorily protected activity by as much as five weeks since the decision was made to reassign Officer O'Sullivan on August 16th. In short, the necessary causality between the protected activity and the claimed retaliation is absent. *Gleason*, 118 F.3d at 1147.

---

[4] Obviously, filing an EEOC charge or even an official complaint with an employer may constitute statutorily protected activity under Title VII. *Tomanovich v. City of Indianapolis*, 457 F.3d at 663; *Lang*, 361 F.3d 416, 419 (7th Cir. 2004); *Herron v. DaimlerChrysler Corp.* 388 F.3d 293, 298 (7th Cir. 2004)(requesting meeting with independent group employer established to investigate discrimination complaints). And even less formal grievances have been held to constitute protected activity. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 676 (7th Cir. 2005)(written and oral complaints to management); *Firestine*, 388 F.3d at 231 (contacting employer's employee relations specialist). How informal the complaint can be has seemingly not been determined, *see Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005)(finding waiver of argument that plaintiff did not engage in statutorily protected conduct because she did not complain about sexual harassment through employer's formal complaint process). But there must be something more than general grousing to fellow workers. *Gleason*, 118 F.3d at 1146-47.

*Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000) does not compel a different conclusion. While the court there directed that "[w]hen assessing back pay, . . . the judge must respect the findings implied by the jury's verdict," the court also ruled that "whatever discretion the facts allow with respect to back pay and front pay belongs to the judge rather than the jury." 220 F.3d at 501. Here, the jury found that the defendant retaliated against O'Sullivan for filing the grievance, but not necessarily by removing her as Watch Commander.

The instant case is one in which "several issues [were] litigated, and the jury may have supported its verdict by findings in the plaintiff's favor on any one of the issues." *Miles*, 387 F.3d at 600. However, under the plaintiff's theory of the case (*see O'Sullivan Motion to Set Lost Pay*, ¶¶ 1-2; 4/12/06 – 9:30 a.m., Tr. 215) and under the jury instructions (Instruction 18), the jury could not have found that Commander Perry's transfer of Officer O'Sullivan to the Third Watch in August was in retaliation for her grievances, which occurred more than a month later in late September 2000.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for an order setting lost pay [# 115] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 11/6/06

9