IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIANE O'SULLIVAN, JANICE ROCHE, )
and NANCY LIPMAN, )
)
Plaintiffs, ) No. 01 C 9856
)
vs. ) Magistrate Judge Jeffrey Cole
)
CITY OF CHICAGO, )
)
Defendant. )
)

## MEMORANDUM OPINION AND ORDER

### I.
### INTRODUCTION AND FACTUAL BACKGROUND

The trial in this case ran from jury selection on April 10, 2006, through April 21, 2006, when the jury began deliberating. On April 24, 2006, the jury returned a verdict in favor of the defendant on the plaintiffs' discrimination claims and a verdict in favor of the plaintiffs on their retaliation claims. Evidence of the defendant's retaliation against the plaintiffs consisted in part of charges of misconduct that had been made against Nancy Lipman and Diane O'Sullivan, who were subjected to what the jury could find was a pretextual, protracted, retaliatory investigation of those charges that came in the wake of their complaints of discrimination.[1]

---

[1] The charges were in the form of what were called complaint registers, or CRs. A CR is a formal compliant of some infraction of Police Department rules or regulations. It is followed by an internal investigation to determine whether punitive action should be taken. The plaintiffs had never had CRs filed against them in their long careers in the police department prior to their experiences with Commander Perry in the Second District – and have had none since. Throughout the trial, however, the City tried to argue that a CR was insignificant since it did *not necessarily* result in any disciplinary measures against its subject; it was merely a charge to be investigated that might or might not be sustained. The jury did not find that explanation credible in the context of what occurred to the plaintiffs and the nature of the charges against
(continued...)

The CRs issued against Lipman and O'Sullivan were still pending when they filed their suit, and they continued to hang over their heads throughout the trial. Then, on July 12, 2006, a little over two months after the jury concluded that the City had retaliated against the plaintiffs, Lipman and O'Sullivan received suspension notices based on the CRs, with both scheduled to suffer a one-day suspension without pay. There then followed an emergency motion for an injunction to prevent that disciplinary action. By agreement, the suspensions were held in abeyance pending the disposition of the motion.

The City's initial objection to the motion is jurisdictional: the suspensions are "new acts that require new charges of discrimination" and a new lawsuit. (*Defendant's Motion to Deny Plaintiffs' Motion*, at 2). The corollary to this argument and on which it depends, is that the plaintiffs have failed to exhaust their administrative remedies because they have not filed a new complaint with the EEOC regarding these one-day suspensions. Finally, the defendant contends that the plaintiffs have failed to meet the usual criteria for establishing entitlement to injunctive relief.

The evidence the jury considered is discussed in the decisions on the parties' post-trial motions. See *O'Sullivan v. City of Chicago*, 2007 WL 671040 (N.D. Ill. 2007); *O'Sullivan v. City of Chicago*, 2007 WL 496783 (N.D. Ill. 2007); *O'Sullivan v. City of Chicago*, 2006 WL 3332788 (N.D. Ill. 2007). It is repeated here only to the extent necessary to trace the CRs issued against the plaintiffs – which the jury found to be in retaliation for the plaintiffs' grievances against Commander

---

[1](...continued)
them and jury could have found that there was a stigma in receiving the CRs beyond the threat of eventual discipline. In light of the almost immediate post-trial suspensions, the City's assurances to the jury that there was nothing certain about the outcome of the CRs in this case have proven to be "a promise to the ear to be broken to the hope, a teasing illusion like a munificent bequest in a pauper's will." *Edwards v. California*, 314 U.S. 160, 186 (1941) (Jackson, J., concurring).

2

Marienne Perry – to the suspensions at issue. When all three plaintiffs – O'Sullivan, Lipman, and Roche – filed their grievance against Commander Perry, accusing her of racial discrimination, the grievance somehow "fell through the cracks." It was not assigned a CR number as would normally have been the case as a matter of course. (4/11/2006--1 pm Tr. 81, 117-19). As a result, the inference that the jury was free to draw is that the plaintiffs' grievance was never the subject of a proper investigation.

In addition, when rumors circulated that certain white police officers under Commander Perry's command were of the impression that she was making racially discriminatory employment decisions (4/11/2006 – 9:30 am Tr. 10-13, 37), Commander Perry effectively commandeered the subject matter of the plaintiffs' grievance and went on the offensive by filing a CR "against" herself. (4/11/2006– 9:30 am Tr. 10-13; 4/11/2006--1 pm Tr. 119; Plaintiffs' Ex. 10). In reality, she was not actually filing a complaint against herself but, rather, offering her rationalization of any questionable employment decisions she might have made. By so doing, Commander Perry got ahead of the wave of complaints against her that she felt was sure to come. Rather than have their complaint addressed through the ordinary, proper channels, then, the plaintiffs had to settle for Commander Perry dictating the terms of battle, as it were.

A little more than a month after the plaintiffs filed their grievances, on November 1, 2000, at 5 a.m., Lipman received a phone call from Agent Garcia of the Internal Affairs Division. (4/12/2006– 1 pm Tr. 63-64). The story of Garcia's role in the retaliation is told in the post-trial opinions. He demanded to know why Lipman was not in his office – even though she had no notice that she should have been. (Tr. 64). He then ordered her to appear immediately with a thorough, written report to back up her grievance against Commander Perry. (Tr. 64-65). Lipman was, not

3

surprisingly, unprepared and unable to do so on such short notice. (Tr. 65). Lipman went to Garcia's office as soon as she was relieved from her post that morning, and did the best she could. (Tr. 65). But Garcia issued a CR against her for failing to follow an order – in essence, he added Lipman as an "accused" to the CR Commander Perry had initiated. (Tr. 66).

As it turned out, the notice to Lipman was actually sent to the Second District a day in advance, but the staff there failed to forward the notice to her. (Tr. 64). The problems that all three plaintiffs had with Commander Perry's staff are detailed in the memorandum opinions and orders on the parties' post-trial motions. Commander Perry's staff treated Lipman with disrespect, and would often send her on bogus assignments to other districts where she was not actually needed. (Tr. 36-39). The staff, essentially, acted as an obstacle to getting police work done, but it was Lipman who Commander Perry would threaten with disciplinary action for the their recalcitrance. (4/13/2006–9:30 am Tr. 2-3).

But even if the staff had alerted Lipman to the notice from Garcia, she would have had just a day – and a work day at that – to prepare the exhaustive report he demanded. And that was the jury could find impossible. Garcia's gambit put Lippman between Scylla and Charybdis: If she attempted to comply, her report would have necessity be superficial, and the charges of racism against Perry would appear to be unfounded.[2] If she failed to comply there would be no proof from Lippman to support her charges *and* would set the stage for the issuance of a CR for failure to abide by a direct order. Interestingly, despite Agent Garcia's requirement of immediate action from others, he did not impose comparable conditions on himself. Agent Garcia's investigation of the CRs against the

---

[2] Setting impossible deadlines is an oft-used tactic. *See, e.g., Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006).

4

plaintiffs dragged on for 942 days, according to his own report. (Tr. 66-67; Plaintiffs' Ex. 9, at 31). Eventually, in April of 2003, Agent Garcia recommended that Lipman be suspended for ten days for her failure to follow his order to appear on November 1st with a thorough report. (Tr. 66-67; Plaintiffs' Ex. 9, at 30-31).

O'Sullivan had a similar experience with Agent Garcia, and similar problems with Commander Perry's staff. Commander Perry tolerated rude and disrespectful behavior the African-American staff visited upon O'Sullivan. (4/11/2006–1 p.m. Tr. 159-61, 171-73; 4/12/2006–1 p.m. Tr. 35-36). Indeed, the jury could easily infer from Commander Perry's own testimony that she was in her African American staff's corner when it came to criticisms of their performance from any one of the plaintiffs. (4/11/2006–9:30 am Tr. 14-18). But like Lipman, O'Sullivan, too, was taken to task for failing to appear in Agent Garcia's office when scheduled to do so with a thorough report in support of her allegations against Commander Perry. In the end, after more than two-and-a-half years, Agent Garcia sustained the CR against O'Sullivan as well. (Plaintiffs' Ex. 9, at 30-31). He recommended that O'Sullivan be given a reprimand for failing to follow orders and not preparing a thorough report.

The jury determined that the defendant retaliated against the plaintiffs for their complaints of discrimination against Commander Perry, and judgment was entered in their favor on April 24th, 2006. Lipman and O'Sullivan received damage awards in the amounts of $250,000 and $50,000, respectively. *See O'Sullivan*, 2007 WL 496783 (N.D.Ill. 2007). Then, on July 12, 2006, thumbing its municipal nose at the jury's verdict, the City (acting through the Chicago Police Department), issued suspension notifications to Lipman and O'Sullivan based on the very charges that the jury found were a component of the City's retaliatory efforts.

The City makes no attempt to legitimize the suspensions. Instead, it argues – at least in effect – that an employer who has been found guilty of violating Title VII can nonetheless impose punishment after the trial for the very charges of misconduct that constituted the retaliation, and that a federal court is powerless to do anything about it. This nullification of federal equitable power is based on the contention that the suspensions can only be considered "new" acts of retaliation and therefore there must be new EEOC charges and a new lawsuit. This position is untenable. The City's argument, which ignores the text and history of Title VII and the cases construing it, "bring[s] to mind George Jacques Danton's famous phrase--l'audace, encore de l'audace, toujours de l'audace (audacity, more audacity, always audacity)...." *United States v. Walsh*, 700 F.2d 846, 850 (2d Cir. 1983)(Parenthesis in original).

## II.
## ANALYSIS

### A.
### Title VII Authorizes Injunctions Against Possible Future Discrimination

Throughout its history, Title VII has provided for injunctions to "bar like discrimination in the future . . . " *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975)(*quoted in Burlington Northern and Santa Fe Ry. Co. v. White*, — U.S. —, —, 126 S.Ct. 2405, 2417 (2006). The statute provides that "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate . . . ." 42 U.S.C. § 2000e-5(g). In such cases, the district court has broad discretion to tailor equitable remedies to provide full relief. *Miles v. Indiana*, 387 F.3d 591, 602 (7th Cir. 2004); *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863-865 (7th Cir. 2001).

6

Successful Title VII plaintiffs are entitled to injunctive relief where the employer's discriminatory conduct "could possibly persist in the future." *Bruso*, 239 F.3d at 864. The threshold showing is minimal, as the Seventh Circuit's decision in *Bruso* demonstrates. There, the district court refused to enjoin United Airlines from any further retaliation against the successful plaintiff because it found no evidence that United discourages its employees from complaining about unlawful discrimination or that it engages in systematic retaliation. *Id.* at 864. The Seventh Circuit reversed. What the court said there disposes of the City's arguments in this case:

> We previously have stated that a successful discrimination plaintiff need not demonstrate that his employer engages in a pattern or practice of discrimination in order to receive injunctive relief. *See EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir.1997). In fact, a plaintiff need not produce any evidence beyond that going to his particular case before becoming eligible for injunctive relief. *See id.*; *see also EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir.1993) (citing *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir.1987), for the proposition that the EEOC may not need to produce evidence beyond that pertaining to the individual on whose behalf it sued in order to receive an injunction).
>
> *The relevant inquiry, then, is whether the employer's discriminatory conduct could possibly persist in the future.*
>
> \* \* \*
>
> Mr. Bruso succeeded in persuading the jury that he was the victim of a retaliatory demotion. United offered no evidence to indicate that it was unlikely to retaliate further against Mr. Bruso in the future. To the contrary, the circumstances indicate that it is *possible* that United could retaliate in the future.
>
> \* \* \*
>
> *Thus, an injunction prohibiting further retaliation could provide Mr. Bruso with the legal protection to which the jury's verdict entitles him.* Therefore, we conclude that the district court abused its discretion in refusing to award any injunctive relief in light of the jury's verdict in favor of Mr. Bruso on his retaliation claim. We remand this issue in order to allow the district court to enter an appropriate injunction.

239 F.3d at 864 -865 (Emphasis supplied).

7

In the instant case, we deal not with the question of whether the City's retaliatory conduct could possibly occur in the future – of events "still in the womb of time, and may never have birth," *Complaint. of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. 518, 552 (1851). We deal rather with the certainty of continued retaliation. The suspensions, which are the culmination of the series of retaliatory actions against the plaintiffs, prove rather conclusively that an injunction should issue not only forbidding the suspensions in order that the plaintiffs will have "the legal protection to which the jury's verdict entitles [them]," *Bruso*, but enjoining the City from taking any further retaliatory measures.

Title VII "requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 582 (1984)(*quoting* 118 Cong.Rec., at 7168); *Ford Motor Co. v. E. E. O. C.*, 458 U.S. 219, 230 (1982); *Albemarle Paper*, 422 U.S. at 421. Here, that unlawful discrimination consisted of, among other things, the issuance of CRs against the plaintiffs and subjecting them to Garcia's intolerably protracted investigation, with all its purposeful uncertainty. *See O'Sullivan,* 2007 WL 496783 at *4-5, 22. To allow the City to complete its retaliatory scheme after the jury had found its prior components violative of Title VII would read §2000e-5(g) out of the Act and allow the City to ignore the jury's verdict.

In *Bruso*, the Seventh Circuit pointed out that, in fashioning an appropriate equitable remedy, a court should consider expungement as a means of removing the stain of an employer's disciplinary actions from a plaintiff's permanent work record. 239 F.3d at 863. "By refusing to expunge discriminatory or retaliatory discipline from a successful plaintiff's personnel file, a court may force

the plaintiff to bear the brunt of his employer's unlawful conduct for the rest of his working career, which certainly contravenes the goal of making a plaintiff whole through equitable remedies." *Id.* at 863-864. The remedy the plaintiffs seek is not far removed from expungement of the retaliatory CRs from their records, thereby precluding any future disciplinary action against the plaintiffs on the bases of those CRs. Since the attempted disciplinary action has preceded any expungement, the remedy lies in enjoining that action.

The relief that the plaintiffs seek is no more than is necessary to make them whole and thus within the discretion allowed the court to fashion equitable relief. It would be odd indeed, if the City could suspend a police officer based upon a charge of misconduct that the jury found was an act of retaliation in violation of Title VII. It would be odder still if a court were powerless to do anything about so obvious an evasion of the verdict. If accepted, the City's argument would effectively remove from Title VII a remedial provision the Congress thought essential to make successful plaintiffs whole.[3]

## B.
## Title VII Permits A Successful Plaintiff To Seek Injunctive Relief To Bar Future Violations Of The Act Without Requiring The Filing Of Further Charges With The EEOC And A New Lawsuit

Despite their genesis in the retaliatory CRs, the City maintains that the suspensions are "new" acts of retaliation and necessitate "new" EEOC charges *and* a "new" lawsuit. As Judge Posner has

---

[3] The remedial provisions of Title VII preclude resort to the All Writs Act, 28 U.S.C. §1651. *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002). Under the All Writs Act, federal courts may issue any commands, including injunctions, "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Telephone Co.*, 434 U.S. 159, 172 (1977). Title VII is a source of equitable power no less capable of dealing with the City's brazen attempts to frustrate the verdict and judgment in this case and its open disregard for the proper administration of justice in this court

observed in another context, "[o]bjections to [this] startling thesis crowd the mind." Posner, Overcoming Law, 211 (1995). The argument, which rests on cases in which the issue presented here was not remotely implicated, ignores the text of Title VII and the cases dealing with a successful plaintiff's post-verdict right to injunctive relief. Both the text of Title VII and the cases construing it reflect the emphatic and unmistakable policy of Congress to empower federal courts to make plaintiffs whole and enjoin future violations of Title VII where there exists a possibility of future misconduct. *See supra* at 6. Thus, it is quite beside the point that the suspensions are a "new" (i.e. a further) instance of retaliation by the City against the very plaintiffs against whom the jury concluded it had retaliated already. It is precisely such "new" acts of retaliation that Title VII seeks to prevent through injunctions. Future retaliation or other violations of the Act are dealt with not through additional EEOC charges but through a motion to enforce the injunction and invoke the court's contempt powers. *See E.E.O.C. v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993).[4]

Neither *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and *Probst v. Reno*, No. 99-3897, 2000 WL 1372872, *3 (N.D.Ill. Sept. 22, 2000) support the City's semantic argument. In *Morgan*, the Supreme Court was not dealing with the availability of injunctive relief to a plaintiff who has already proven a Title VII violation, but rather with the very different question of whether "discrete" acts that fall outside the statutory time period for filing charges in 42 U.S.C. § 2000e-5(e) are actionable or time-barred. The Court determined that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the time set forth in 42 U.S.C.

---

[4] The City's argument subordinates reality to semantics. Calling the CRs "the potential" of disciplinary action and the suspensions the "imposition" of disciplinary action, as the defendant does, is meaningless, and characterizing the suspensions as "new" acts ignores their inextricable connection to the retaliatory CRs and their aftermath Here, as always, "the logic of words should yield to the logic of realities." *DiSanto v. Pennsylvania*, 273 U.S. 34, 43 (1927)(Brandeis, J., dissenting).

10

§ 2000e-5(e)(1). The Court differentiated between "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" and claims of an ongoing, hostile work environment, where subsequent events may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole. 536 U.S. at 117, 122.

Plainly, *Morgan* does not control here. "Judges expect their pronunciamentos to be read in context." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). *Cf. Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.); *Illinois v. Lidster*, 540 U.S. 419, 423-424 (2004). Thus, merely because the suspensions against Lipman and O'Sullivan might be characterized as discrete or new violations of Title VII for purposes of the statutory time period for filing with the EEOC, does not mean that a district court cannot enjoin the City either from effectuating the suspensions or engaging in any other acts of retaliation against the plaintiffs.

To the extent that *Morgan* has any relevance here, it undercuts the City's contention. The suspensions were not some isolated acts of discrimination, but merely a continuation of the retaliatory efforts of the City. By a tendentious use of words, the City has segmented what is essentially an interrelated series of events to achieve an artificial separateness between the imposition of the sanctions and all that preceded it. But, as Justice Frankfurter once observed, "[i]t is part of wisdom, particularly for judges not to be victimized by words," *Shapiro v. United States*, 335 U.S. 1, 56 (1948) (Frankfurter, J., dissenting), and courts of equity have never allowed themselves to be misled by mere devices nor baffled by mere forms. *White v. Cotzhausen*, 129 U.S. 329, 344 (1889).

*Probst* involved the application of *res judicata*, not the availability of post-trial injunctive relief to a successful Title VII plaintiff. 2000 WL 1372872, *7. The plaintiff, a DEA agent, had sued and obtained relief in an earlier proceeding, *Probst I*. That case was based on racial

11

discrimination that permeated the plaintiff's working environment during a particular investigation, as well as the retaliation plaintiff encountered after challenging the discriminatory practices. The parties reached a settlement agreement, and judgment on damages was entered. But then the defendant began engaging in what the court called "completely different" conduct. *Id.* at *8. This prompted the plaintiff to file a second set of charges seeking redress for this new course of retaliation that began after the judgment in *Probst I* was entered. Because the plaintiffs' new claims did not exist when the earlier judgment was entered, the court rejected the defendant's argument that *res judicata* barred the new action. *Id.* at *8.

Perhaps it is the timing of the plaintiffs' request for injunctive relief that gives the defendant pause. Ordinarily, a plaintiff will request that an injunction against future acts of discrimination or retaliation be made a part of the judgment entered upon the jury's verdict. That did not happen here, and the City's argument in favor of judicial impotence shows that the City sought to take advantage of that improvident omission. There is nothing improper, however, about moving for such relief in the wake of the verdict and entry of judgment. *See, e.g., Bruso*, 239 F.3d at 852; *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1314 (11th Cir. 2000); *see also Miles v. Indiana*, 387 F.3d 591, 594 (7th Cir. 2004)(equitable relief). The course that *Freitag* took is somewhat instructive here.

In *Freitag*, the plaintiff, a California state prison officer obtained a jury verdict in her Title VII sexual harassment and retaliation case on April 3, 2003. About six weeks later, she moved to amend the judgment to include permanent injunctive relief. 468 F.3d at 537. The district court granted her motion in part, entering an order enjoining the defendant from further sexual harassment and from any retaliation against employees complaining about practices made unlawful by Title VII.

The defendant appealed the court's award of injunctive relief, arguing that the plaintiff did not even work for defendant any more. The Ninth Circuit rejected the defendant's contention and affirmed the trial court's order.[5]

## C.
## The Plaintiffs Have Already Demonstrated They Are Entitled To Injunctive Relief

Lastly, the City argues that the plaintiffs have failed to establish that they are entitled to an injunction against the pending suspensions. The contention ignores Title VII case law, relying instead on a patent case, *eBay Inc. v. MercExchange, L.L.C.*, – U.S.–, –, 126 S.Ct. 1837 (2006). (*Defendant's Motion to Deny Plaintiffs' Motion*, at 8). There, the Supreme Court recited the familiar four-part showing a plaintiff must make to demonstrate entitlement to injunctive relief: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. 126 S.Ct. at 1839.

But here, a jury has already determined that the defendant violated Title VII by issuing the CRs against the plaintiffs. Once a Title VII violation has been shown, district courts have broad discretion to issue injunctions addressed to the proven conduct. *See E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). In that context, the proper inquiry becomes "whether the defendant's 'discriminatory conduct could possibly persist in the future.'" *Miles*, 387 F.3d at 601

---

[5] As it happened, the plaintiff in *Freitag* had been terminated as a result of disciplinary actions that formed the basis of the plaintiff's retaliation claims. She initiated an administrative appeal of the termination, which remained pending throughout the trial and the appeal. 468 F.3d at 536. The Ninth Circuit acknowledged that the plaintiff's reinstatement was not certain, but that she nevertheless had standing to seek an injunction because the administrative process remained pending, meaning her property rights to her job had not been extinguished. *Id.* at 548.

13

(*quoting Bruso*, 239 F.3d at 864); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001)("... where a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation."); *Burlington N. R.R. Co. v. Dep't of Revenue*, 934 F.2d 1064, 1074 (9th Cir.1991) ("The standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." (internal quotation marks and citation omitted)).[6] *See also Bedrossian v. Northwestern Memorial Hosp.*, 409 F.3d 840, 843 (7th Cir. 2005)("if a statute confers a *right* to an injunction once a certain showing is made, no plaintiff ... need show more than the statute specifies.).

In sum, compliance with the four-part test generally applicable to requests for injunctive relief is inapplicable in the context of cases such as this. Were the rule as contended for by the City, *Bruso v. United Airlines, Inc.*, *supra* at 7, could not have been decided as it was. That is, the court would have employed the four-part test on which the City insists, rather than conditioned relief simply on a showing that "the defendant's 'discriminatory conduct could possibly persist in the future."

## CONCLUSION

---

[6] Although the four-part showing is not applicable here, it must be said that the defendant's argument relying on that usual requirement rings hollow. The defendant argues that injunctive relief is inappropriate because plaintiffs have an adequate remedy at law. According to the defendant, monetary damages would clearly compensate the plaintiffs for a suspension – the loss of a day's pay – and the plaintiffs could have the suspension erased from their records. (*Defendant's Motion to Deny the Plaintiffs' Motion*, at 8-9). But the defendant's own suggestions of appropriate relief gut its argument. Erasure of the suspensions from the plaintiffs' record *is injunctive relief.* *Bruso*, 239 F.3d at 863. And, in *Burlington Northern*, the Court suggested that monetary recompense such as back pay did not necessarily alleviate the need for injunctive relief to make the plaintiff whole. 126 S.Ct. at 2417.

The jury found that the City violated Title VII, and that the CRs were retaliatory. The evidence demonstrates rather clearly the intentional nature of the City's violations. By attempting to follow through with suspensions against the plaintiffs despite the jury's verdict, the City has conclusively made the case against itself that its retaliatory conduct is likely to persist in the future. An injunction against such conduct is appropriate in this case.[7] Indeed, not to enjoin the City would be an abuse of discretion. *Bruso*, 239 F.3d at 865.

For the foregoing reasons, the plaintiffs' motion for an order barring the defendant from imposing the pending suspensions on plaintiffs Lipman and O'Sullivan [# 147] is GRANTED, and the City's opposing motion [#155] is DENIED. The defendant is also ordered to expunge the CRs from the employment records of all three plaintiffs. The plaintiffs' motion for sanctions and attorney's fees is DENIED.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 3/15/07

---

[7] The plaintiffs have also moved for attorneys' fees and unspecified sanctions against the City, but fail to develop any argument in support of that request. Undeveloped arguments are waived. *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir.2005); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690 (7th Cir.2006).*Sternberg v. Debuys*, 1992 U.S.App. LEXIS 14606 (9th Cir. 1992) (one sentence was insufficient to raise issue).

The plaintiffs did not move for injunctive relief prior to the defendant's attempt to suspend Lipman and O'Sullivan. Thus, technically, at least, the City was not in violation of any court order. Accordingly, sanctions and attorneys' fees are inappropriate.

15